**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Kostov, | No. CV-23-00613-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Maricopa County Special Health Care District, | |
| Defendant. | |

Plaintiff Robert Kostov filed an unopposed motion to approve the parties' settlement agreement in this FLSA collective action. (Doc. 225.) Approval is appropriate if "the proposed settlement constitutes a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Dunn v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016) (simplified). The proposed settlement contains one term that may prevent approval.

The parties have agreed to settle the wage and hours claims brought by 735 individuals. (Doc. 225-3 at 4.) The claims involve "automatic meal deductions" that allegedly resulted in underpayment of wages. (Doc. 225 at 11.) During this case the parties engaged in often-contentious discovery, including 24 depositions. (Doc. 225-3 at 4-5.) And having completed that discovery, plaintiffs believe there is "substantial risk" their claims would fail if litigation continued. (Doc. 225-2 at 5.) Based on that risk and the likely value of their claims, plaintiffs represent the proposed settlement amount is reasonable.

The proposed settlement would establish a fund of $525,000 to be distributed pro

rata after five types of deductions are made. The deductions are: 1) up to $175,000 in attorneys' fees; 2) costs of $64,643.76; 3) $10,000 service award to Kostov; 4) $1,000 service awards to the plaintiffs who were deposed; and 5) $250 service awards to those plaintiffs who provided declarations. Under what they describe as a "best-case-scenario" if litigation continues, plaintiffs claim the pro rata distributions after the deductions would be "59% of the potential two-year recovery [assuming a two-year statute of limitations applies] and 37% of the potential three-year recovery [assuming three-year statute of limitations applies]." (Doc. 225 at 18-19.) The settlement amounts would be distributed via check and plaintiffs would have 180 days to negotiate those checks. Any checks not negotiated within six months would "be void and the amount will revert back to Defendant." (Doc. 225 at 13.)

In general, the settlement represents a fair and reasonable resolution of the parties' disputes. The amount of fees, service awards, and pro rata distributions represent a fair result given the strength of the claims and defenses. But the proposed reversionary clause requires explanation. "Claims made settlements with reversions to a defendant are strongly disfavored." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 612 (E.D. Cal. 2015). While reversionary clauses are not forbidden, parties seeking approval of a reversionary clause must provide some explanation why such a clause is appropriate. *Id.* If there is a compelling explanation for the proposed reversionary clause or if the parties agree to remove the reversionary clause, the settlement will be approved. If there is no compelling explanation and the parties insist on including the reversionary clause, approval is unlikely.

**IT IS ORDERED** no later than **July 9, 2025**, the parties shall file a supplement explaining why a reversionary clause is appropriate.

Dated this 30th day of June, 2025.

Honorable Krissa M. Lanham
United States District Judge